UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLOTTE RIESS &
ARNOLD E. FELDMAN

VERSUS

METSUN TWO BATON ROUGE LA
SENIOR LIVING, L.L.C. &
SUNRISE SENIOR LIVING
MANAGEMENT, INC.

CIVIL ACTION

NO. 12-280-JJB

**RULING ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a motion to dismiss filed by Defendants, MetSun Two Baton Rouge LA Senior Living, L.L.C., and Sunrise Senior Living Management, Inc. (Doc. 6). Plaintiffs Charlotte Riess and her son, Arnold E. Feldman, filed this action in state court on April 9, 2012. Defendants removed Plaintiffs' action to this Court pursuant to 28 U.S.C. § 1446. Jurisdiction is proper under 28 U.S.C. § 1332. Defendants now ask that Plaintiffs' action be dismissed for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative, that Plaintiffs be compelled to provide a more definite statement in accordance with FED. R. CIV. P. 12(e). (Doc. 6-1). Should this Court be inclined to dismiss, Plaintiffs request leave to amend their petition pursuant to FED. R. CIV. P. 15(a). (Doc. 9). For the reasons stated herein, the Court grants Defendants' motion in part and denies in part. Furthermore, Plaintiffs are granted leave to amend their petition.

I.

In their petition, Plaintiffs allege that on August 31, 2010, Riess became a resident of Sunrise at Seigen, an assisted living facility owned and operated by

Defendants. Plaintiffs claim that on April 10, 2011, as a result of Defendants' failure to supervise or secure Riess, she was found on the floor having injured her hip, among other things. Plaintiffs further allege that Defendants committed acts of negligence that resulted in injuries to Riess on December 18, 2010, January 7, 2011, and February 28, 2011. Both Riess and Feldman claim to have suffered mental and economic injuries as a result of Defendants' conduct, though only Riess claims to have suffered physical injuries. Finally, Plaintiffs allege that Defendants breached a contract entered into between Riess and Defendants. (Doc. 1-1).

**II.**

Civil actions may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "A motion to dismiss . . . challenges the adequacy of a complaint on its face." *Kamen v. Int'l Broth. of Elec. Workers (IBEW) AFL-CIO*, 505 F. Supp. 2d 66, 71 (D.D.C. 2007). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In evaluating a motion to dismiss, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). After assuming the veracity of the plaintiff's well-pleaded facts, the court should "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A plaintiff's claims must go beyond mere "labels and conclusions." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). That is to say, "a formulaic recitation of a cause of action will not do." *Id*. Indeed, pleadings that contain nothing more than conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

FED. R. CIV. P. 12(e) authorizes a party to file a motion for a more definite statement. Such a motion is the proper remedy when "a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed." *Beanel v. Freeport-McCoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

Finally, FED. R. CIV. P. 15(a) provides that a party may amend its pleadings with the court's leave, which should be given freely "when justice so requires." Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Rule 15(a) "evinces a bias in favor of granting leave to amend" such that a court should have a "substantial reason" for denying the request. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

**III.**

Defendants first argue that, since Plaintiffs' action was commenced on April 9, 2012, any injury prior to April 9, 2011 should be dismissed as having prescribed. (Doc. 6-1). Such injuries would include those alleged by the Plaintiffs to have occurred on December 11, 2010, January 7, 2011, and February 28, 2011.

In Louisiana, "[d]elictual actions are subject to a liberative prescription of one year" which begins to run "from the day injury or damage is sustained." LA. CIV. CODE art. 3492. Plaintiffs, however, argue that the continuing tort doctrine operated to suspend

prescription until April 10, 2011, when Defendants' alleged final tortious act occurred. (Doc. 9). The continuing tort doctrine holds that when "tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La. 1982). In order for the doctrine to apply, the conduct must "be of a continuing nature" and it must also "give rise to successive damages from day to day." *Hunter v. Tensas Nursing Home*, 32-217 (La. App. 2 Cir. 10/27/99); 743 So.2d 839, 842, *writ denied*, 1999-3334 (La. 2/4/00); 754 So.2d 228.

Plaintiffs first support their argument of the continuing tort doctrine's applicability by relying on *Randall v. Concordia Nursing Home*, 2007-101 (La. App. 3 Cir. 8/22/07); 965 So.2d 559, *writ denied*, 2007-2153 (La. 1/7/08); 973 So.2d 726. *Randall* involved a claim for "violations of Mrs. Randall's 'right to be treated courteously, fairly and with the fullest measure of dignity' as guaranteed to her" in Louisiana's Nursing Home Resident's Bill of Rights (LA. REV. STAT. § 40:2010.8). *Id.* at 569. The Third Circuit found that the trial court's reliance on the testimony of multiple witnesses that the nursing home was "continuously and habitually understaffed" was not manifestly erroneous. *Id.* at 569–70. Thus, it was reasonable for the trial court to conclude, based on the testimony, that the continuous understaffing damaged Mrs. Randall on a day-to-day basis. *Id.* at 570.

Plaintiffs also direct the Court to *Petre v. Living Centers-E., Inc.*, 935 F. Supp. 808 (E.D. La. 1996) and *Francis v. Health Care Capital, Inc.*, 933 F. Supp. 569 (E.D. La. 1996). Like *Randall*, both *Petre* and *Francis* involved allegations of nursing home neglect; each case was before the court on the defendants' motions for summary

4

judgment. *Petre*, 935 F. Supp. at 810; *Francis*, 933 F. Supp. at 570. In both cases, the court found that the defendants' overall negligent care "rose to the level of tortious activity due to its continuous and cumulative effect over time and, therefore each alleged incident would not have necessarily been an actionable tort standing alone." *Petre*, 935 F.Supp. at 815; *Francis*, 933 F.Supp. at 574.

These cases, however, do not counsel in Plaintiffs' favor. Unlike *Randall*, the torts alleged in Plaintiffs' petition were not comprised of continuing acts that gave rise to successive, day-to-day damages. *Randall* also involved a different type of tort claim—one based on a specific provision of Louisiana's Nursing Home Resident's Bill of Rights. Finally, each of Riess's alleged injuries would have been an actionable tort standing alone. Unlike *Petre* and *Francis*, Defendants' alleged negligent acts did not become tortious *only because* of their cumulative effect over time.

Instead, Plaintiffs' claims are more like those in *Hunter v. Tensas Nursing Home*. There, the plaintiff's aunt suffered several acts of abuse while a resident at the defendant's nursing home. *Id*. at 840. The court reasoned that even though the alleged acts of abuse were similar (in that they all arose from the neglect of the nursing home's staff) each instance of abuse was "clearly separate and distinct, with particular damages flowing from each individual occurrence." *Id*. at 842. Thus, the nursing home's conduct did not amount to "continuing acts of abuse." *Id*.

As was the case in *Hunter*, each of Riess's specifically alleged injuries—skin tears and an ankle/foot injury—was separate and distinct, with damages flowing from each occurrence. Thus, the continuing tort doctrine is inapplicable and did not prevent the running of prescription. All of Plaintiffs' tort claims for which the alleged injury

5

occurred before April 9, 2011, therefore must be dismissed as having prescribed. All of Plaintiffs' claims for emotional distress and loss of consortium damages that are premised upon the prescribed tort claims are accordingly dismissed.

Defendants next argue that Plaintiffs' claim for the injury Riess allegedly suffered on April 10, 2011 should also be dismissed. Defendants argue that Plaintiffs have failed to properly allege a claim for negligence. A successful claim for negligence must demonstrate that the defendant owed, and subsequently breached, a duty that he had to the plaintiff, that the breach was both the cause-in-fact and legal cause of the plaintiff's injuries, and that actual damage occurred. *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94); 646 So.2d 318, 322 (La. 1994).

Plaintiffs' claim for this act of negligence, however, does not go beyond mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Plaintiffs' allegations provide only "a formulaic recitation" of the elements of their cause of action. *Id*. Thus, Plaintiffs have not put forth sufficient facts such that this Court would be able "to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. In accordance with FED. R. CIV. P. 15(a), however, the Court grants Plaintiffs leave to amend their pleadings.

To the extent that Plaintiffs are able to amend their petition to state a sufficient claim for negligence, the Court finds that Plaintiffs' claims for the emotional distress and loss of consortium damages premised upon that negligence claim have been adequately pled.

Finally, Defendants ask that Plaintiffs' breach of contract claim be dismissed. A prima facie case for a breach of contact claim requires that the plaintiff prove: (1) that

6

the obligor undertook an obligation to perform; (2) that the obligor failed to perform the obligation (the breach); and (3) that the failure to perform resulted in damages to the obligee. *Garco, Inc. v. Rob's Cleaning & Powerwash, Inc.*, 2008-1249 (La. App. 4 Cir. 4/22/09); 12 So.3d 386, 391, *writ denied*, 2009-1114 (La. 9/4/09); 17 So.3d 965. Plaintiffs' petition alleges only that "Riess became a resident of Sunrise . . . pursuant to a contract with defendants" and that "the injuries [she] sustained . . . were the direct and foreseeable result of the defendants' breach of their contract with [her]." Just as with their claim for negligence, Plaintiffs petition does not allege the necessary factual basis for a breach of contract claim. In light of their request, however, Plaintiffs will be given leave to amend this claim as well. In doing so, Plaintiffs should indicate the specific contractual provision Defendants have allegedly breached.

## IV.

For the foregoing reasons, Defendants' motion to dismiss (doc. 6) Plaintiffs' claims for negligence and damages that occurred before April 9, 2011 is GRANTED. Defendants' motion to dismiss Plaintiffs' claims for negligence and damages that occurred on or after April 9, 2011 is DENIED.

With respect to Plaintiffs' claims for negligence that occurred on or after April 9, 2011 and Plaintiffs' breach of contract claim, Plaintiffs' request for leave to amend the pleadings, in conjunction with Defendants' motion for a more definite statement, is GRANTED.

Signed in Baton Rouge, Louisiana, on November 5, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE**